HENRY F. YOUNG *vs.* CITY OF BOSTON & another.

The St. of 1846, c. 167, gave the city of Boston authority to regulate the use of the Cochituate water and establish water rates; and enacted that "the occupant of any tenement" should be liable to pay the rate "for the use of the water in such tenement," and in certain cases "the owner thereof" should be liable also. A city ordinance accordingly provided that for the use of the water "in model houses, so called," there should be charged, "for each tenement having water fixtures within the same," a specified rate; delegated to a board its authority under the statute, with power to ascertain by meters the quantity used in any case and establish a rate therefor instead of the specific rate; and made it the duty of a registrar to cut off the water for nonpayment of rates. J. S., with his family, was "tenant and occupant" of one of ten suites of rooms in a model lodging-house owned by a corporation which had the general charge of the building and controlled the halls, passages and outer doors. Each suite "was occupied by a separate tenant," and contained "a kitchen, sleeping-room and all the conveniences of a common dwelling-house," including separate water fixtures. All these fixtures were supplied with the water from the same pipe. The board set a meter on this pipe; established a rate for the use of the water as measured by the meter; and, against the protest of J. S. and the corporation, charged it to the corporation and refused to make a separate charge to each tenant; and the city treasurer, who was collector of the rates, refused to accept from J. S. the amount of the specific rate, which J. S. tendered in payment for the use

of the water in his suite of rooms. *Held*, that J. S. was the occupant of a tenement enti-tled under the statute and ordinance to the use of the water therein on payment or tender of the specific rate, and might maintain a bill in equity to restrain the city and the registrar from cutting off the water from his suite of rooms.

BILL IN EQUITY filed February 24, 1868, against the city of Boston and William F. Davis, its water registrar, praying for an injunction against cutting off the Cochituate water from the plaintiff's tenement, and for general relief.

The bill alleged that the plaintiff was tenant and occupant of a tenement numbered 2 in a building called a model lodging-house, situated at number 3 Osborn Place in Boston and owned by the Model Lodging-house Association, a corporation; that this tenement was supplied with the Cochituate water by fixtures within it, including a water closet, and entirely dependent for water on the Cochituate water so supplied; that by law, and by the St. of 1846, *c.* 167, the plaintiff was entitled to the use of that water on payment of the usual reasonable and equable rates therefor, and by the city ordinances the annual water rates for a tenement of a model lodging-house having fixtures within said tenement were three dollars, and a like additional sum if the tenement contained a water closet in use, which rates were as large as was usual, reasonable or equable; that the plaintiff, in payment of his said annual rates, tendered six dollars to the city treasurer, (who was the proper officer to receive payment of all such rates,) and was still and ever has been ready to pay said sum, but the treasurer refused to receive it in payment of the plaintiff's water rates; and finally, that the water registrar was threatening, and had given notice to the Model Lodging-house Association of his intention, to cut off the Cochituate water from the plaintiff's tenement, alleging the command and authority of the city in justification of such cutting off, whereas the plaintiff denied that the registrar had such command and authority from the city, and further denied that the city had a right to give such command and authority.

The answer admitted that the model lodging-house described in the bill belonged to the Model Lodging-house Association and that the city furnished water to 't; but left the plaintiff to

prove "whether he occupies rooms or apartments" in it, denied that the city furnished water to the plaintiff, and alleged ignorance whether the plaintiff was dependent for a supply of water on the water which the city furnished; admitted that by a city ordinance the rates alleged by the plaintiff were charged by the city for supplying water to tenements in model lodging-houses; but denied that such rates applied where the water was measured by meters; and then proceeded thus: "And for answer to the rest of the plaintiff's bill these defendants say, that, by the statutes of the Commonwealth, and by the ordinances passed by the city of Boston under and in conformity with them, the Cochituate Water Board of said city have vested in them the powers conferred upon the city council of Boston by the several acts of the general court for supplying the city of Boston with pure water; that said water board furnishes water to John L. Emmons, treasurer of the Model Lodging-house Association, for the model lodging-house mentioned in the bill; that the association by its porter or agent occupies and takes charge of the staircases and passages in the building, used in common with the tenants thereof, and lets out to various tenants the several suites of lodgings therein; that the association, as the occupants of the building, are liable to pay the rates charged as the price of the water furnished thereto; that each suite of lodgings has water fixtures of its own, and the water is furnished thereto by one common pipe, and the price thereof is charged to Emmons, as treasurer as aforesaid; that by the ordinances of said city the Cochituate Water Board is empowered in any case to ascertain by a water meter the quantity of water used, and to establish a rate therefor according to the amount used; that in consequence of the great number of water fixtures placed in said model lodging-houses the Cochituate Water Board adjudged it necessary to, and did, place a water meter therein, and did fix a rate for the water supplied, as ascertained and measured by said meter, and that they charged Emmons for the water so used according to said meter; all of which the said Cochituate Water Board had a right to do, to protect the inhabitants of the city from a great waste of water by the tenants in

the building, and the consequent danger of a failure in the supply thereof; and the defendants say that, if the cost of water used by the tenants of the building is greater than it would be if there were no water meter and if each suite of lodgings were charged the fixed price mentioned in said bill, it is in consequence of the extravagant and wasteful quantity of water used by the tenants thereof; wherefore the defendants pray that this bill may be dismissed," and for their costs.

Issue was joined on the answer, and the case reserved by *Gray*, J., for the determination of the full court, on the pleadings and the following statement of facts :

" The plaintiff with his family is and has been for some years a tenant and occupant of a suite of apartments or tenement, numbered 2 in model lodging-house at No. 3 Osborn Place in Boston, owned by a corporation called the Model Lodging-house Association. There are ten suites of apartments or tenements in the house, each one of which contains a kitchen, sleeping-room and water closet, and all the conveniences of a common dwelling-house. The water used in this model lodging-house is charged to John L. Emmons, treasurer of the corporation, and is furnished by one pipe, to which a water meter has been attached, and from this pipe there are separate pipes to each set of apartments, which are dependent on the Cochituate water for a supply. There are no fixtures in the house which are used in common by the tenants, and there would be no mechanical difficulty in applying a water meter to measure the amount of water used in each tenement or suite of rooms. While each tenement or suite of rooms is occupied by a separate tenant, the halls and passages and outer doors are controlled by the corporation, who have the general charge of the building and have heretofore paid the entire water rates for the whole building and charged the same to the several tenants. The rate payable by tenants for the use of water in model lodging-houses is six dollars a year for each tenement in which the water is not measured by a meter ; and this sum the plaintiff has tendered, and is ready and willing to pay, to the treasurer of the city, but the treasurer refuses to receive the same. The water board of the city

charge the treasurer of the Model Lodging-house Association
at the rate of three cents for each and every one hundred gal-
lons of water used in the building, as measured by the meter,
which they have caused to be attached as aforesaid; and they
refuse to make a separate charge to each tenant for the quantity
used by him.  The plaintiff and Emmons, before the beginning
of the term for which the water bill in question is charged, both
protested against the above mode of measurement, and acts of
the water board.  The sum charged the whole house, when ap-
portioned among the tenants, is more than double the rates fixed
by the ordinances for the tenements or model lodging-houses
where there is no water meter.  The water board claim the
right, when there is a great quantity of water used in any one
building, to measure the same by a water meter, in their discre-
tion, and charge for the water so measured to the occupants of
the whole building.  The cost of a water meter is so great as to
render its application to a common dwelling-house, or to single
tenements in a model lodging-house, impracticable.  There is
no separate account kept with each tenant in a model lodging-
house, but only with the individual owning and controlling the
whole building.  The water registrar of Boston threatens and
intends to cut off the water from the lodging-house, if the whole
rate charged by the water board to Emmons is not paid.

" If, upon the case disclosed by the bill and answer and these
facts, the court shall be of opinion that the Cochituate water
board are justified in measuring and charging for the water fur-
nished to the model lodging-house in this manner, and the water
registrar in cutting off the water aforesaid, then this bill is to be
dismissed; otherwise a perpetual injunction is to be granted,
or such other order or decree entered, as law and equity may
require."

It was further agreed that special statutes of the Common-
wealth, and the city ordinances, might be referred to by either
party at the argument, and those portions thereof to which refer-
ence was made are printed in the margin.*

---

\* The St. of 1846, *c.* 167, § 1, authorized the city of Boston "to take, hold
and convey to, into and through the said city, the water of Long Pond," *i. e.* the

*G. O. Shattuck & O. W. Holmes, Jr.*, for the plaintiff. 1. The water registrar threatens to cut off the water from the tenement occupied by the plaintiff in a model lodging-house, if he does not pay a rate assessed by the water board which is double the rate charged in such cases by the ordinance of the city; and goes further, and threatens and intends to cut off the water although the plaintiff does pay the increased rate, if the occupants of other tenements in the model lodging-house do not pay also. The plaintiff denies the authority both of the water board to charge for, and of the registrar to cut off, the water in this manner.

---

Cochituate water, "for the purpose of furnishing a supply of pure water for the said city." In § 2, it provided that the city might "regulate the use of the said water within and without the said city, and establish the prices or rents to be paid therefor;" and in § 14, that "the occupant of any tenement shall be liable for the payment of the price or rent for the use of the water in such tenement, and the owner thereof shall be also liable, if, on being notified of such use, he does not object thereto."

The city ordinances in force at the time of the proceedings in this case empowered a board, entitled the Cochituate Water Board, to have and exercise all the powers vested in the city council by the St. of 1846, c. 167, so far as they could be legally delegated. Laws & Ordinances of Boston, (ed. 1863,) 795. They also provided for the annual choice by the city council of a water registrar who should "assess the water rates according to the tariff established by the city council," and "exercise a constant supervision over the use of the water and attend to the enforcement of all regulations relative thereto," and "cut off the supply in all cases of nonpayment of the water rent for sixty days after the same is due," and "under the control of the Cochituate Water Board make abatements in the water rents in all proper cases." Ib. 796, 797. They further provided, in the tariff of water rates, that "the following rates for the use of the Cochituate water in model houses, so called," should be charged, "viz: for each tenement having water fixtures within the same, three dollars annually; and for each tenement not having water fixtures within the same, but taking the water from general fixtures, used in common with other tenements, two dollars annually; and in addition to the foregoing rates, there shal also be charged for each such tenement, in which a water closet or bathing tub is used, three dollars annually." Ib 804. And they also provided that the water board should "have power to ascertain by meters the quantity of water used in any case," and "when in any case the quantity used shall be ascertained and measured, in manner before mentioned, the Cochituate Water Board may establish a water rate therefor, instead of the specific rate hereinbefore established." Ib. 807.

2. The water board bases its authority on the provisions of the ordinance that it " shall have power to ascertain by meters the quantity of water used in any case," " and when in any case the quantity used shall be ascertained and measured " in that manner, " may establish a water rate therefor, instead of the specific rate." The plaintiff contends that this means that, wherever a person is chargeable with a specific rate under the ordinance, the board may substitute a rate fixed by the quantity of water ascertained, by applying a meter, to have been actually used in that case — not a rate by a guess from the quantity ascertained to have been used in a whole street or any other aggregation of tenements, but a rate proportioned to a specific quantity, for which a specific rate had been previously charged.

Under the ordinance the plaintiff is chargeable with a specific rate for which he is separately liable, namely : six dollars per annum. The ordinance establishes this rate for " each tenement " " in model houses, so called," " having water fixtures within the same," and a water closet in use ; and the St. of 1846, *c.* 167, § 14, provides that " the occupant of any tenement shall be liable for the payment of the price or rent for the use of the water in such tenement." It is enough for the plaintiff that the ordinance construes the word " tenement " as applying to his case. But see also *Stockwell* v. *Hunter,* 11 Met. 448, 454 ; and *Commonwealth* v. *Watson,* 97 Mass. 562. For the purpose of liability under the statute, there cannot be two different tenements which embrace the same set of rooms. If the plaintiff is occupant of a tenement within the statute and ordinance, the Model Lodging-house Association cannot be the same.

3. The city not only did not, but could not, give the authority claimed by the water board, by which the most frugal water taker may be compelled to bear the burden of the prodigal occupant of another tenement. Nor could it give the registrar power to cut off water from the plaintiff because the occupants of other tenements did not pay their bills. This is a public use. *Wayland* v. *Middlesex,* 4 Gray, 500. And the public have a right to use the water on equal and reasonable terms. *Lum-*

*bard* v. *Stearns,* 4 Cush. 60. *Twells* v. *Pennsylvania Railroad Co.* 3 Am. Law Reg. (N. S.) 728, 734. *Sandford* v. *Catawissa, Williamsport & Erie Railroad Co.* 24 Penn. State, 378. *Beekman* v. *Saratoga & Schenectady Railroad Co.* 3 Paige, 45, 75. *Gaslight Co.* v. *Colliday,* 25 Maryl. 1, 16. *Shepard* v. *Milwaukee Gaslight Co.* 6 Wisc. 539, and *Same* v. *Same,* 15 Wisc. 318.

*C. H. Hill,* for the defendants. 1. The material facts are simple. The water board furnishes Emmons, the treasurer of the association, with water for a model lodging-house. The account is kept with him; the contract for the water is made with him. The defendants have made no contract with the plaintiff, are under no obligation to furnish him with water, and do not know him in the premises.

2. The first question is, whether the board has authority to place a meter in one lodging-house, and thereby measure the water furnished, and charge for it accordingly, without doing the same to all parties receiving water from the city, or even to all model lodging-houses. There is no distinction between this case and that in which it has been decided that the board can do so in respect of hotels. *Parker* v. *Boston,* 1 Allen, 361. The St. of 1846, *c.* 167, gives broad powers to the city in relation to the subject. Water rates are not taxes, but prices paid for a commodity sold. Absolute equality in these prices, such as would be required in taxation, is impracticable; and all that the city is bound to do is, to provide some plan by which substantial justice shall be done to all paying for the water, and an equality established among them so far as the nature of the thing furnished, the generous supply of it, and the inherent difficulties connected with regulating the use of it, render practicable. When there is a large number of persons using the water in a building, the dangers of waste are greatly increased, and the court will not say that in such instances public officers who have no pecuniary interest in the results may not in thei .iscretion adopt a more efficient method of measuring the quantity supplied, than in instances where the water is used by very few and the dangers of waste are slight. The case finds that it

is impracticable to measure water in all instances by a meter, but that in tenements where a great quantity is used the saving thus made will more than compensate for the expense of the meter. The gist of the complaint of the association is, that they are obliged to pay for the water which they use, while other people may be able to escape paying for it. This case is analogous in principle to *Fitchburg Railroad Co.* v. *Gage*, 12 Gray, 393, and *Boston & Worcester Railroad Co.* v. *Western Railroad Co.* 14 Gray, 253.

3. This model lodging-house is a "tenement," within the meaning of the ordinance ; and the occupant responsible for the water rates is the association having the general charge of the building, and not the tenants of the various suites of apartments. *Kirby* v. *Boylston Market Association*, 14 Gray, 249. *Milford* v. *Holbrook*, 9 Allen, 17. It is unnecessary to consider what the rights of the plaintiff would be if he had ever demanded that water should be furnished to him by a separate pipe, in the manner in which separate dwelling-houses are supplied. He has made no such demand, and the association cannot raise any objection for him. But the defendants contend that there must be a limit on the rights of people occupying suites of apartments and separate rooms in a building, to demand that separate supplies of water shall be furnished to, and separate accounts kept with, them ; and that, where such a suite of apartments or a room is merely a subdivision of another tenement, that is to say, where the occupant of the building responsible to the public is another person, who subdivides the building but yet retains the general control of it, the city is not bound, as matter of law, to furnish pipes to, or apportion the rates among, the lesser tenants.

CHAPMAN, C. J. By the St. of 1846, *c.* 167, entitled "An act for supplying the city of Boston with pure water," the city was authorized by and through the agency of three commissioners to construct its now existing aqueduct. It was to be main‹ tained and regulated under the authority of the city council, and at the expense of the city ; and one of its principal objects was to supply the occupants of tenements in the city.

The plaintiff occupies a tenement in a model lodging-house so called; and a special provision is made in the city ordinances for this class of tenements. A section of the ordinances cited, establishing the rates of charges for the use of the water in such houses, provides that, "for each tenement having water fixtures within the same," the rate shall be "three dollars annually; and for each tenement not having water fixtures within the same, but taking the water from general fixtures used in common with other tenements, two dollars annually." The word "tenement" is obviously used to describe such part of the house as is separately occupied by a single family, in contradistinction from the whole house. The water board and registrar are to be governed by this ordinance. *Parker* v. *Boston,* 1 Allen, 361. And no more authority is conferred upon them by the ordinance to compel the occupants of a tenement to take the water in common with the occupants of the other tenements in the house, than to compel the occupants of all the separate houses in a block or a street to take the water in common with each other; it being agreed that the plaintiff's tenement has separate fixtures, and he not using, nor desiring to use, the water in common with others.                               *Decree for the plaintiff.*