STATE, RED STAR LINE STEAMSHIP COMPANY, PROSECU-
TORS, v. MAYOR AND ALDERMEN OF JERSEY CITY.

1. The board of public works cannot, under the charter of Jersey City, charge certain water consumers with expensive meters put in by them to regulate the supply and rent to be paid, without the consent of the persons charged; nor impose the penalty of cutting off the water for non-payment of the price of the meter.

2. The proviso in section 87 of the charter that their rules, regulations and by-laws shall not be inconsistent with the constitution and laws of the State of New Jersey, or of the United States, forbids the making of unwarranted discriminations in particular cases, and arbitrary charges, with the penalty of forfeiture of the right to use the water.

On *certiorari* to the board of public works of Jersey City.

Argued at February Term, 1883, before Justices DEPUE, SCUDDER and REED.

For the prosecutors, *J. B. Vredenburgh.*

For the defendants, *A. L. McDermott.*

The opinion of the court was delivered by

SCUDDER, J.   This *certiorari* is directed to the board of public works of Jersey City to determine the validity of two resolutions passed by the board February 20th, 1882, which are as follows:

" *Resolved,* That all parties using metered waters be charged the full value of the meter in use, and that the water registrar is hereby directed to collect the same; and further

" *Resolved,* That upon failure to pay for said meter upon due notification by the registrar, the water shall be shut off."

A copy of these resolutions, together with a bill for the price of one 4" Gem meter, $220, and a notice "that after the expiration of thirty days from date of this notice your supply of water will be shut off until the charge for meter is paid," dated March 24th, 1882, were served on the prosecutors. They resist the demand of payment for the water meter, and deny the legality of the resolutions.

The act to re-organize the local government of Jersey City (*Pamph L.* 1871, *p.* 1094,) enacts (section 81) that the board of public works shall regulate the distribution and use of the water in all places and for all purposes where the same may be required, and from time to time shall fix the prices for the use thereof and the times of payment, &c.

Section 87, under which the power to pass these resolutions is claimed, enacts that for the security and proper management of the Jersey City water-works and drainage-works, and to prevent the waste or improper use of water, the said board of public works shall have power to make such by-laws, rules

and regulations respecting the introduction of Passaic water into houses, tenements and manufactories, or other places where the same may be required, and may, from time to time, regulate the use thereof in such manner as may seem to them necessary and proper, &c., provided such rules, regulations and by-laws are not inconsistent with the constitution and laws of the State of New Jersey or of the United States, and the penalty imposed in any one case shall not exceed the sum of $50.

There is no question that under these powers the board of public works may use meters to measure the amount of water taken by consumers, and regulate the price by the quantity; but the prosecutors say the company must pay for these expensive meters wherever they are used, and not impose this charge on the consumers. Besides this general contention, the facts found in the affidavits show that the land occupied by the prosecutors is owned by the Associates of the Jersey Company; that the pier and lands adjoining at the foot of Grand street were leased to the International Navigation Company, owners of the Red Star Line Steamship Company, January 1st, 1881, for a term of six years. Prior to this lease, in the summer of 1879, this meter was first put in at the foot of Grand street. The meter was detached in February, 1880, and put back in June, 1880, where it has since remained. Both dates are prior to the prosecutors' lease.

There are two ways in which water rents are rated and collected—one by meter, the other by house rates and estimates. There is no doubt, under the evidence, that the former is the better and less costly method when applied to the business of the prosecutors.

The scheme for supplying Jersey City with pure and wholesome water, which orignated in 1851, (see *Pamph. L., p.* 389,) was put in shape in 1852, (*Pamph. L., p.* 419,) has continued since in several supplements, (*Hood's Index* 472,) and contemplates the construction of proper works, laying of pipes or conduits for conveying water, and in general doing any other act necessary or convenient for accomplishing the pur-

poses of the statute, and the distribution of the water through-out the corporate limits of Jersey City and other places, as the inhabitants thereof may require. These works were to be paid for with notes, scrip, or certificates of debt, to be denominated on the face " Jersey City Water Scrip." The commissioners, or board to whom the control was entrusted, were, from time to time, to fix the price for the use of the water and the times of payment; and the owner and occupant of any house, tenement or lot shall each be liable for the payment of the price or rent fixed by the commissioners or board, for the use of the water by such occupier. Such prices were to be fixed with reference to ultimately paying the interest and principal of the " Jersey City Water Scrip;" and the net proceeds of the water rents, after paying all expenses of maintaining the works and distributing the water and other expenses, shall be applied to the payment of the interest on this debt and the purchase of scrip.

It has seemed to me that the general statement of the purpose and methods of these acts demonstrates that all the expenses of laying the water-pipes, distributing the water, adjusting the price or rent to be paid, were to be borne by the city, while a rental fixed for the use or advantage of the water was all that was required of the citizen who had the benefit. A meter is a contrivance to regulate the distribution of water by adjusting the quantity and price. It is therefore within the province of the city board's duties, to enable them to fix their rates with exactness, instead of by uncertain estimate, and to deal justly with the consumers. The idea advanced on the argument in behalf of the city was, that the meter was for the advantage of the consumers, to protect themselves against the overcharge of the commissioners, and from excessive estimates of the quantity of water used. The only duty of the consumer spoken of in the charter is the payment of rent for the use of the water, and there is nowhere an intimation that the city may, without his consent, supply fixtures for the distribution or use of water and charge him with the cost. Section 87 of the act of 1871, under which the right to make this

charge is claimed, enables the board of public works to make by-laws, rules and regulations for the security and proper management of the water-works and drainage, for the introduction of water into the houses and to regulate the use thereof, as may seem to them necessary and proper; but it is not said that by such by-laws, rules and regulations they may, on their own motion, procure expensive devices for regulating the supply of water and impose the cost on the consumer. There is no contract, express or implied, on the part of the prosecutors in this case to pay for the meter. It was put in before they became tenants of the premises—some time in 1879—and if they should pay for it they would have no legal claim on their landlords, at the end of their term, for its price or value if it was left on the premises; and if they should attempt to remove it they might be met with some regulation of the board preventing its removal, because of its use in determining the quantity of water used, or if removed it might be of little value to them elsewhere. It is therefore a case of hardship to make this charge against them, and it is without support in the charter. The by-laws of a board of managers of city water-works for the supply of water to the citizens, must be consistent with the charter, and they must not conflict with any constitutional, statutory or common law rights of property of the citizen. This I understand to be the meaning of the proviso in section 87 of the charter, that the by-laws, rules and regulations are not to be inconsistent with the constitution and laws of the State of New Jersey or of the United States. They cannot make unwarranted discrimination in particular cases, or arbitrary charges, with the penalty of forfeiture of the right to use the water provided at the public expense for the benefit of all the citizens making a fair compensation for its use. *Dayton* v. *Quigley*, 2 *Stew. Eq.* 77; *Parker* v. *City of Boston*, 1 *Allen* 361; *Young* v. *City of Boston*, 104 *Mass.* 95; *Kip* v. *Paterson*, 2 *Dutcher* 298; 1 *Dill. on Mun. Corp.*, §§ 319, 320, 321, 322.

If the payment for the meter cannot be enforced under the charter and first resolution of the board of public works,

then the penalty of cutting off the water imposed by the second resolution cannot be used to compel a compliance with the illegal demand. Our conclusion is, that as to these prosecutors these resolutions are without legal authority, and will be set aside, with costs.