MILLVILLE IMPROVEMENT COMPANY et al.

*v.*

MILLVILLE WATER COMPANY.

[Submitted February 10th, 1921.   Determined March 23d, 1921.]

1. A water company organized under *3 Comp. Stat. p. 3635*, and charged with a public duty of furnishing water to all inhabitants without discrimination, may adopt reasonable rules for its business and operation of its plants, which are binding on its patrons, and may be enforced even to the extent of denying water to those refusing to comply with them, such power being incident to corporations of that nature; yet they must return to the patron such part of the advanced payment as is unearned when discontinuing his service.

2. Under the Water act, the right of the company to enforce reasonable rules is necessarily subordinate to its recognized public duty touching uniformity and universality of service, and it must recognize and respect the paramount right of all citizens similarly situated to receive water, and cannot deny water to a tenant whose premises are adequately equipped and who is willing to pay for water.

3. In the absence of legislative authority, there is no lien in favor of a water company on real estate for water supplied to an owner or a tenant.

4. As between landlord and tenant there is no liability on the part of the former to pay for water supplied to the premises for the latter's use, in the absence of an express or implied agreement to that effect. Water pipes and fixtures are appurtenances of a building, the use of which passes to the tenant, but the water is not the property of the landlord, and the water company may not impose a condition that the landlord become responsible for the charges.

5. In the absence of legislation to the contrary, a tenant is privileged to contract for water service to the same extent as the owner of the property, and any restriction upon, or discrimination against, a tenant's right is inconsistent with the public duties imposed upon the water company, and, in the absence of legislation creating a lien on the real estate for water service, or other legislation of like effect, no person can be denied service because of the delinquency of a prior owner or tenant.

6. In the absence of statute or regulation, it is the duty of a water company to lay water mains to all lateral fixtures and connections in such a manner that connection may be made with properties at the boundary lines between streets and alleys and private lots, and it is not the duty or privilege of such company to enter upon private property in the construction of a system beyond such boundary line, nor of a citizen

to lay pipes in the streets beyond such boundary, and owners and tenants must accept the entire responsibility for the suitable equipment of buildings to receive reasonable service.

7. Where property is so equipped with fixtures that if a tenant should become delinquent his service could not be cut off by the water company without cutting off that of another tenant, the company cannot be required to serve tenants.

On bill for injunction. On hearing at return of order to show cause.

*Mr. Louis H. Miller,* for the complainants.

*Mr. Lewis Starr,* for the defendant.

LEAMING, V. C.

Complainant corporation is the owner of eight several residence buildings in the city of Millville; the individual complainants are the several tenants who occupy the buildings. The corporation, as landlord, and the individuals, as tenants, join in the bill filed herein to restrain defendant water company from carrying out its purpose to refuse to supply water to the several tenants unless complainant corporation, as owner of the buildings, pays or guarantees the payment of the usual charges for water to be supplied to the buildings for the use of the several tenants.

There is no dispute touching the essential facts. Each of the eight buildings referred to is what is known as a double tenement-house—that is, two residences united in one building. Each residence is occupied by a tenant, making in all sixteen tenants as complainants.

Defendant corporation is a water company supplying the inhabitants of the city of Millville with water. Defendant is incorporated under the Water act of 1876. *P. L. 1876 p. 318; 3 Comp. Stat. p. 3635.*

It has long been the custom and may be said to be the adopted rule of defendant company in supplying water to the inhabitants of the city to deal exclusively with the owners of buildings and to require from such owners the payment for water service

at defined and uniform rates payable in advance each six months. Water rents for the several buildings here in question have heretofore been paid in that manner by complainant corporation. Complainant corporation has now made leases to the several individual complainants in which each of the tenants has engaged to pay the water rents. All of the tenants are willing to pay defendant company in advance in accordance with defendant's rules as to rates; but defendant is unwilling to treat with any of them or to accept their money or to in any way recognize their liability to pay unless complainant corporation, as owner of the buildings, first guarantees the payments.

The single question for determination and the sole controversy between the parties is whether defendant water company is privileged to require the owner to pay for the water to be supplied to the tenants of the buildings or to guarantee such payment, and to refuse to recognize the claim of right of the several tenants to pay in advance for water to be supplied to them.

This question does not appear to have heretofore arisen in this state; but the authorities in other jurisdictions touching the relations of water companies to their patrons appear to be so uniform and sound in principle that the general inquiry here submitted can scarcely be said to be an open question.

It is well recognized that a water company, though charged with the public duty of furnishing water to all of the inhabitants without discrimination, may adopt reasonable rules for the conduct of its business and the operation of its plant, and such rules, so far as they affect its patrons, are binding on them, and may be enforced, even to the extent of denying water to those who refuse to comply with them. Such power is not dependent upon any express legislative authority; it is incident to a corporation of that nature. *Robbins* v. *Bangor Ry. & El. Co.*, *100 Me. 496; State* v. *Butte City Water Co.*, *18 Mont. 199; American Water Co.* v. *State*, *46 Neb. 194; State* v. *Water Supply Co.*, *19 N. M. 27; Watauga Water Co.* v. *Wolfe*, *99 Tenn. 429.* This right of reasonable regulation is uniformly held to include the right to shut off the water supply of delinquents and also the right to require consumers to pay water rents for a reasonable time in advance. *State* v. *Water Supply Co.*, *supra; Watauga*

*Water Co.* v. *Wolfe, supra;  Hatch* v. *Consumers Co., 17 Idaho 204;  affirmed, 224 U. S. 148;  State* v. *Butte City Water Co., supra.* Various periods for advance payments have been held reasonable; but in *Rockland Water Co.* v. *Adams, 84 Me. 472,* one year was held an unreasonable period. In all such cases it is to be assumed that the regulation includes a right of the patron to a return of such part of the advance payment as is unearned by reason of the service being discontinued before the end of the period for which an advance payment has been made.

Section 13 of the Water act, under which defendant company is operating, provides:

"That said company may sell and dispose of the water issuing from their reservoirs, aqueducts or pipes, for such price or prices, or quarterly or annual rents, and such restrictions as they may think proper."

So far as this provision relates to rates or regulations it can only be understood as contemplating reasonable rates and restrictions.

But, although the right of a water company to adopt and enforce reasonable rules for the conduct of its business and operation of its plant is thus uniformly recognized, such rules, to meet the requirements of reasonable regulations, are necessarily subordinated to the recognized public duty of corporations of that nature touching uniformity and universality of service—that is, the public duty of corporations of that nature to recognize and respect the paramount right of all citizens, similarly situated and appropriately circumstanced, to receive water, and to receive it on the same terms. Consistently with that duty it is clear that service of water cannot be denied to a tenant whose premises are adequately equipped to receive such service and who is willing to pay for it.

That conclusion is rendered manifest by a more detailed consideration of the relations of a water company to its patrons. In the absence of legislative authority there is no lien on the real estate for water supplied to either an owner or a tenant; the water is supplied on the credit of the patron. *Turner* v. *Revere Water Co., 171 Mass. 329;  State* v. *Albuquerque Water Supply Co., supra.* In the cases last cited it is also held to be an un-

reasonable regulation to deny water to an owner or occupant of a building because of a default of a prior owner or prior occupant, though reasonable to deny water to a delinquent patron. This personal nature of the service and the rights of all citizens to its enjoyment necessarily exclude the notion that a water company can deny service to a tenant whose landlord refuses to guarantee payment for such service.

Nor is there, as between a landlord and his tenant, any liability on the part of the landlord to pay for water supplied to the premises in the absence of express or implied agreement between them to that effect. Water pipes and fixtures are appurtenances of a building and the use of them passes to a tenant. But the water is a commodity in no way attached to the realty, and is not the property of the landlord; it is to be furnished at a price to such person as is entitled to receive it and desires to purchase it. *Sheldon* v. *Hamilton, 22 R. I. 230.* As between the water company and the tenant who is entitled to receive water service, and whose premises are properly equipped for such service, it has been specifically held that the public duty of the water company to serve patrons without discrimination denies to such company the right to refuse to supply such tenant or to impose a condition that the landlord become responsible for the charges. *State* v. *Butte City Water Co., supra.* In that case the precise question was presented which is here under consideration. *Farmer* v. *Nashville, 127 Tenn. 509,* is to the same effect, and further holds that in the absence of legislative authority a denial of water to a tenant because the landlord is in default for water supplied to the landlord prior to the inception of the tenancy is unlawful because in conflict with the public duty of the water company to supply all patrons. *Bourke* v. *Olcott Water Co., 84 Vt. 121,* is to the same effect as *State* v. *Butte City Water Co., supra.* In the *Bourke Case,* however, the specific language of the charter of the water company may be said to have materially contributed to the conclusion there reached. *Turner* v. *Revere Water Co., supra,* also holds that a tenant is entitled to water service because of the public duty to supply water to all persons, notwithstanding the landlord's delinquency in payment for prior service, and that it is in violation of the public duty of the water company to

deny service to the tenant until the prior delinquency of the landlord shall have been paid, in the absence of a statute making the charge a lien on the real estate. In *State* v. *Water Supply Co., 19 N. M. 27*, it is held that in the absence of legislation making delinquent water charges a lien on the land a tenant cannot be denied water service because of arrearages of a prior tenant or prior owner; but that such service could be denied if the statute imposed a lien. *Linne* v. *Brides, 43 Wash. 540*, is to the same effect, holding that an owner cannot be denied water service because of delinquency of a prior tenant, in the absence of legislative authority. To the same effect are *Chicago* v. *Northwestern Mutual Life Insurance Co., 218 Ill. 40; City of Covington* v. *Ratterman, 128 Ky. 336; McDowell* v. *Avon, &c., Imp. Co., 71 N. J. Eq. 109.*

The general rule which appears to be recognized by practically all the authorities on the general subject may be said to be that in the absence of legislation to the contrary a tenant is privileged to contract for water service to the same extent as the owner of the property, and that any restriction upon, or discrimination against, that right of a tenant is inconsistent with the public duties imposed upon a water company and, accordingly, unlawful; and that in the absence of legislation creating a lien on the real estate for water service, or other legislation of like effect, no person can be denied service because of delinquency of a prior owner or tenant. No legislation in this state of the nature suggested has been brought to the attention of the court.

But, notwithstanding the views above expressed, touching the general right of a tenant of a property to contract for and receive water service, and the duty of a water company to supply such tenant on his sole credit, it seems clear that complainants in this suit are not entitled to the relief sought by the bill.

The premises here in question are eight double buildings with a separate tenant in the enjoyment of half of each building. Each building is supplied by one service pipe in such manner that in order to supply one-half of either building with water, water must also be supplied to the other half of that building, since no stop cock or shut off has been provided to enable one-

half of any building to be separately supplied with water. In the practical operation of that equipment it is obvious that should any tenant for any cause determine to discontinue contractual service or seek free service or become delinquent, in order to serve the remaining tenant in such building the water company would be compelled to continue to supply both tenants.

As heretofore stated, the right of a tenant to exact service of water necessarily presupposes a premises suitably equipped for that purpose.

It appears to be held with entire uniformity of decisions that in the absence of statutory regulation to the contrary, it is the duty of a water company to lay water mains and all laterals, fixtures and connections in such manner that connections may be made with properties at the boundary lines between streets and alleys and private lots; that it is not the duty or privilege of a water company to enter upon private property in the construction of its system beyond that boundary line and is not the duty or right of a citizen to lay pipes in the street or beyond the boundary referred to. *Bothwell* v. *Consumers Co., 13 Idaho 568; Pine Bluff Corporation* v. *Toney, 96 Ark. 345; Title Guarantee Co.* v. *C. R. Com., 168 Cal. 295.* Accordingly, the owners and tenants of a building must accept entire responsibility for the suitable equipment of such buildings to receive reasonable service.

The equipment of the buildings here in question is of the same class as that of office buildings or apartment-houses, having no provisions made for the supply of water to the several offices or apartments except by a supply to the entire building as one unit. In such circumstances it is obviously impracticable for the water company to contract with the tenants of the several offices or apartments unless provision exists to control the supply to each office or apartment.

No suggestion is herein intended to be made, touching the eight, of a water company to deal exclusively with the owner of an office or apartment building which is supplied with water through a single tap, but which is also equipped with separate taps for each office or apartment. (See *Kelsey* v. *Fire, &c., Commissioners, 113 Mich. 215; Gaines* v. *Charleston Light and*

*Water Co., 104 S. C. 136; Jopling* v. *Bluefield Water Co., 70 W. Va. 670; Young* y. *Boston, 104 Mass. 95; Cox* v. *Cynthiana, 123 Ky. 363.*)    But where a building is supplied with water through a single tap and separate parts of the building are occupied by tenants and no equipment is provided to enable the water company to supply with water any part of the building without supplying water to the entire building, it is clearly impracticable for the water company to adequately operate through contracts with the several tenants; in such circumstances, in reasonable and practical operation, the building can only be regarded as a unit and the water company can only reasonably be required to treat with the owner.

In this view the relief sought by the bill must be denied.